We'll proceed to the next case. Bob Melton Trucking Service v. Workers' Compensation Commission, 410-0312. Counsel, please. May it please the court, counsel. My name is Jim Kelly, and I'm here arguing on behalf of the employer in this case. I was asked over the weekend to play golf this afternoon and declined because I said I had to argue here in the appellate court. You chose this over a golf game? I did, I did. It probably discredits everything I'm about to say. But I was immediately asked, I guess it's the TV today, people want to know about court cases. But the people that I was with on Saturday night said, oh, well, tell me about this workers' compensation case that you're going to argue. And I said, well, this is a truck driver that has this unique condition that's personal to him called the Valsalva effect, that when he starts to sneeze, he blacks out. People looked at me and said, well, why is that work-related? And I said, well, I don't think it is. And they said, well, was, I said it happened in his truck, and they said, well, was he injured? And I said, well, according to his own doctor and his own testimony, he had some superficial scrapes, but his doctor said he would have had the exact same injuries if he had had this Valsalva effect at his home, at church, or in a cafeteria. They said to me again, well, why is that work-related? And I said, again, I don't think it is. And they replied, that's probably why we're reading about our workers' compensation system in the paper. Justices, the facts of this case are very simple. This is a truck driver that came to work for our employer. He had been there approximately six months. He had this, the medical evidence is consistent and unrebutted, that he had this personal condition that was personal in nature to him, and it caused him to black out when he sneezed. One night when he was driving, it was 4 a.m., there was not traffic on the highway. He was not in a hurry. There were no traffic issues. There was no construction issues. There were no potholes. There was nothing about his load that he was carrying or his cab that caused him to develop dry eyes, and he started to sneeze, and he blacked out. There's no high shoulder. There's no evidence that anything about being in a semi caused him to drive off the roadway. Well, does it have to? I mean, it really isn't the crux of the issue, and it's probably something really challenging to really wrap your head around, but the argument made, and what the Commission seemingly found in accordance with the Stembridge Builders case, is, look, yeah, anybody could have this condition. Anybody could sneeze. I mean, that's nothing unusual, perhaps, except that when you couple that with the fact that he has to drive for a living, it's required by his employment, the risk of harm is exacerbated. It's graduated and becomes a risk of employment because when you have this condition concurrently with operating a truck, you have a very greater risk of harm than the general public is exposed to. Yeah, somebody sitting behind a desk that has this? There's no problem there. When you're driving a lethal weapon and you have this, that's a little different, isn't it? Isn't it the fact of what he has to do while he has this condition that increases the risk of harm? Justice, I think that in this case it's not, and I think you hit on the case, the Stembridge case, that the Commission cited, and I think it's totally distinguishable from this case. And if you look at the brief that's, if you look at my opponent's brief, he states it on page 5 of his brief, and that is this. An injury is not compensable if it results in a risk personal to the employee rather than incidental to the employment. Recklessly doing something persons are employed to do, which is incidental to their work, differs considerably from something totally, a risk totally unconnected from the work. That's the Stembridge case. Stembridge, the guy was driving for a living, and he was speeding, which the court has said irrelevant. We don't have comparative fault. And in Stembridge, the Supreme Court has told us that if there's perils of the highway, then we're at the issue, I'm not saying I agree with it, but we're at the issue you're stating. And in Stembridge, a young kid is driving for an errand for work. Somebody tries to pass him. He panics. He overcorrects, and he rolls his car. The court says compensable accident. That's totally different than what we have here. What we have here is a person who passes out and drives off the roadway. There's no greater risk to him than if he's in his own automobile. There is no testimony, no evidentiary facts that anything about being in a semi, the killing machine, or being on the perils of the roadway caused this accident. In fact, it may have saved his life. Doesn't he have to be behind the wheel in connection with his job? He does, Your Honor, but distinguish that from the case at the arbitrator's side. That's the more relevant case, and that's why I read this quote from my opponent's brief, and that is, in Schwartz, the person drove off the road similar to this, and the issue is, like in our case, it was something personal in nature to him. He drove off the roadway. It isn't a heart attack case. If you read the case closely, and you should know, all of you should know, is that he had some kind of a cardiac event. The arbitrator ruled that the injuries from the accident killed him, and it was ultimately overturned, and it was stated that that was something that was personal in nature to him. He had a heart attack. He had a fatal heart attack. So once he's dead, what happens behind the wheel is irrelevant. Here was the combination of driving and the sneezing condition that both played a role in the accident. There's no evidentiary facts in this case or in that case that that's what caused him to die or to leave the roadway. That's not what the facts are. In that particular case, we don't have a witness here, but we have his own testimony. In the Schwartz case, they said he slowed down the driver and veered off of the roadway. He was later found to be dead, but we don't know. Maybe his eyes were dry. In this particular case, certainly the death doesn't distinguish it. Let's say the guy died in our case here. Would we be talking about the superficial scratches? We had superficial scratches in Schwartz, but he was dead. The fact that he's dead makes it not. Why aren't we doing the same analysis in Schwartz? Why aren't we doing the analysis of the perils of the roadway? Well, the reason we're not doing that is because something personal in nature to him took him off the highway, veered him off the highway. And I would suggest to you in that case it's an over-the-road truck driver, very similar to the facts in this case. Steambridge is not analogous to this case. Schwartz is analogous to this case. To further answer your question, you know, I think the evidentiary facts in this case, if you look at page 11 of the claimant's testimony, he states that this laid down on its side. It laid down on its side. He was trying to prevent himself from going into southbound traffic, which probably would have killed him. I mean, where's the evidence from any expert? I mean, in Steambridge we had an accident reconstructionist. We had a policeman talk about it. There's no expert testimony that anything about being in that truck contributed to his injuries or his accident. If he had been in a Yugo, would he have been safer than buckled in a semi? I don't think so. If he would have been in a 4x4 truck, would he have been safer than being in a Yugo? He probably would have been. Let me give you this example. According to you, the fact that he has to drive for a living never has anything to do with the analysis. If a company hires somebody who suffers from narcolepsy, okay, and puts him behind the wheel of a car, and he ends up killing somebody and killing himself, your argument to us would obviously be, look, he could fall asleep sitting behind a desk. So the fact that he's got to drive for a living has nothing to do with it. No, Justice, I'm not saying that. What's the difference if he has a sneezing episode or he has narcolepsy? Because if we were talking about the perils of the roadway, an auto crash, I might not agree with it, but it would be consistent with the law that that would be a compensable case. And the thing that the Commission got wrong in this case is, and if you look at their decision, the one Commissioner did not understand why I was bringing up the injuries. And this goes directly to your point. CISBRO got thrown into this mix because of the Commissioner saying that I was bringing that up, as you're pointing out now, any everyday activity away from work just because you're in a semi doesn't matter. That's not what I was arguing at all. The case that I feel like is on point, and it's not to my advantage, but I think if you logically follow it through, it supports why this is not a compensable case. And that's the old Rockford Hotel case. That's what this case is. We have a case where a person who has an epileptic seizure at work and falls down, that's not a compensable accident. But if your job requires you to be shoveling coal into a fire pit and you fall in, that's a compensable accident. But that's where you get to the injuries. That's where you get to the Builder Square case. If you read those cases, if you know those cases and you do, you see that the injury in the Rockford Hotel case, he died from the burns associated with his falling in the coal pit days later. And they said those injuries, if he had had that accident away from work, this wouldn't have been a compensable accident. In this particular case, that's where I was going with the injuries because Builder Square says there's an exception. There's an exception to the general rule that something personal in nature, if it's personal in nature like a Valsalva effect like we have in this, there's an exception to that. And that is if the work or the mechanism of injury is somehow increased. And it's not if you're behind the wheel of a car? Well, and that's where you'd have to look at the injuries, like the cases say. If you are behind the wheel of your personal auto, there's no evidence in here that he was hurt any differently than if he was in his personal auto. And, in fact, the doctor said he would have suffered the exact same injuries if he had not been in a personal auto. So what is it about being a truck driver, being on the road? That isn't a parallel to the highway. There wasn't an auto case. There wasn't a slip on ice. There was nothing about being a truck driver or being in a semi-injury or the origin of the risk that had anything to do with being in a truck. And so I agree with you if we had facts, in our case, where he had slammed into another truck. If he had to slam into another truck, would it be compared? No, but if the doctor said there was something unique about the belt in the semi or if he got hit by the big gear shift in the semi or if he had some kind of load that came forward and crushed him in the semi, those would be things that would be peculiar to this. Is it the risk? Do you judge the compensability in the argument based on the increased risk of harm or do you judge it by the result, how severely you are injured? You seem to be saying that the risk of harm isn't the end of it. It's whether or not he really gets injured or something. No, I'm not saying that. I'm saying you focus on the origin of the risk. The origin of the risk is driving for a living in combination with the sneezing. That's what the commission found. Well, the origin of the accident in this case was a person with something personal in nature. The Biller Square case, we have a person there that staggered and fell down, and there was expert testimony about that. In this case, we have the same thing. We have a person blacking out like we have in Schwartz. We have a person having a cardiac condition and going off the roadway. The origin of the risk had nothing to do with work. If we were talking about, like I say, something about he was in a hurry and was up for three days, there's an origin of the risk. The case you just cited was the guy shoveling coal. Isn't this case very similar to that case? It is, except for the fact... Shoveling coal in and of itself, I mean, having that condition didn't cause the injury. It's the nature of being near the fire and falling in that caused the injury. That's correct. That's correct. But if the injury, if he had fallen into the fire and the doctor said no different injury than if he had fallen right outside the fire, what is the risk associated with the employment? And that's where, if you look at the actual testimony in the Schwartz case, each expert testified that Seton's cardiac event could have occurred on its own at any time. And it's the same analysis here. They're both, you should consider both to determine whether this has anything to do with the accident. I'm saying the first aspect is this is not work-related because the origin of the risk was not work-related. But then I want to make sure I deal with the exception that's outlined in Builder Square that goes back to the Rockford Hotel. And when you analyze it in that context, the exception doesn't apply. So the company can put anybody behind the wheel of the truck with any personal condition and it doesn't matter because, according to you, this personal condition could happen anywhere. I'm not saying that, Justice. I just said that if this guy would have had something connected to his work that caused him to veer off the road, I think it's a compensable case based on the law of our state. Connected to his work because he's driving the truck. That's what's connected to his work. The connection to the work would be something associated with driving the truck. And that is, like you said, he had to stay up, let's say, for 24 hours because he had to get to California to deliver a load. Or let's say he was hauling chemicals and the chemicals got in his eyes and caused his contact to blur. Or let's say his load was such that it sloshed forward. I don't want to persuade you. You keep denying. I said you are arguing that if the company hires somebody with a condition that can cause them to fall asleep, which has nothing to do with his work, correct? Then that can't be compensable, you're saying. I disagree. Because it has nothing to do with his work. I disagree. I think a person with sleep apnea could doze off, wake up, hit a high shoulder, and not be able to correct or hit a pothole or hit a construction barrier. Is that compensable? It would be compensable. But this guy with the sneezing is not. It's not. It's like the Schwartz case. He drove off, veered off the road for something personal in nature to him and nothing about being in a truck or being a truck driver contributed to that. It's the same analogy. I'm sure my opponent is going to get up and talk about the tightrope, but I know that none of you rode to work today on a tightrope. So I would suggest that the commission got it wrong for the reasons I've said. Counsel, please. Thank you. May it please the Court, Counsel. I think the first thing that I'd like to establish is some of the facts. The facts in this case were established by Dr. Zwilling, and it's very important that the Court understand that the only evidence from a medical provider on this issue was that his injuries were caused by the motor vehicle accident, not by the sneezing. Specifically, I asked him, and I'll quote it, okay, and doctor, with respect to the low back pain and the right leg pain, he indicated that he was sneezing. Do you have an opinion as to whether that low back pain and right leg pain would have been caused from sneezing versus the actual crashing of the vehicle? He answered, Dr. Zwilling, My opinion medically would be that it would likely be related to the vehicle accident. Okay? So this is not a situation where someone sneezes, although the doctor said it's possible that someone, I suppose, could sneeze so hard and have a freak accident that they sprain their back or injure their back just from sneezing. He said in this case, I believe that this person injured his back more likely than not from the accident, not from the sneeze. I think we can take that. Now, your opponent makes a very impassioned argument. Well, so what? This guy could have the sneezing anywhere. What does this have to do with his job? That's the crux of his argument. What does this have to do with driving? He could have got this anywhere. I think there's several points to make. First of all is that I believe my burden of proof is to prove that his driving contributed to the accident, and that is the motor vehicle accident contributed to his accident. I do not need to prove that it's impossible that he could have gotten this injury had he been in his personal automobile or that he could have gotten this at church or that he could have gotten this from falling down. I don't have to disprove, I don't have to prove, let me rephrase that, I don't need to prove that it's impossible for this petitioner to get this injury any other way other than through crashing the automobile accident. Yeah, but you also need to hone in on is this risk, I mean, he didn't specifically put it in these terms, so I'll sort of make the argument for him. If this is purely a personal risk that the general public is exposed in a private vehicle, how do you respond to that? Well, I think I would respond by saying that, yes, driving may be common, but it is still an extremely dangerous thing to do. Many people are killed. It's a great, it's very dangerous, even though it's common. And I would specifically quote the language from the court in Stembridge. If the work of the employee creates the necessity for travel, he is in the course of his employment. Persons using the highway are subjective to certain traffic risks, and one of them is the danger of collision. The perils of modern-day travel upon the highways are well known. The risk of accident is an ever-present menace. When it is necessitated by employment, the risks incidental thereto become the risks of the employment and remain so long as the employee is acting in the course of the employer's business. That was the case in 1945. What does that mean? The employer takes the worker as they find them? That's correct. And if you have that person doing a dangerous activity, such as driving, you are putting them at risk of having a collision or an accident. Motor vehicle accident is a risk that this employer put Vince Johnson in. And, yes, I mean, and that is in fact what caused his injury. And so the analysis that Stembridge gives, I think, is a fine analysis and does not need to be overruled. The analysis is basically if someone gets in a motor vehicle accident and that motor vehicle accident causes their injury, then as long as his behavior wasn't willful or wanton, it's related to the fact that he was in a motor vehicle accident and a risk to his employment. So I don't think Stembridge is exactly on the analysis that Stembridge Court uses. I don't see how you could apply that and say this case is somehow different. The reason why, whether it's because you were speeding, whether it was because you were negligent, or what have you, whatever you were doing, as long as it's not a willful and wanton activity, you are, it's going to be a compensable case. And unless, you know, the court would be inclined to change that, which I would argue that this court shouldn't change the Stembridge analysis because motor vehicle accident, driving a motor vehicle on the highway is still a dangerous activity. So I would ask that the court stay with that analysis. With respect to Schwartz, counsel indicated that nothing in that decision gave any facts that indicated that the heart attack was the cause of death as opposed to the motor vehicle accident. I believe that the Schwartz, and I will quote the specific language that indicated, no, this was a heart attack, this fellow died of a heart attack. And I'm quoting the case. The decedent had been traveling approximately 30 miles per hour at night in moderate traffic with thin layer of snow and slush covering the roadway. There was no indication he tried to prevent his truck from leaving the road or that he attempted to avoid an accident by applying his brakes. An autopsy revealed the decedent's only external injuries were minor superficial abrasions. All of his internal organs were normal except for his heart, which was markedly enlarged. Additionally, there was severe narrowing of his major coronary arteries in the range of 75 to 90 percent. Okay, so there definitely was evidence here that this fellow died from a heart attack, not from a motor vehicle accident. Had he had a coronary event and driven off the road, and then it could be established that he would have lived through whatever the coronary problem was, but he actually was injured due to the motor vehicle accident, the stem bridge analysis would apply because his injuries would have been done due to a motor vehicle accident. But here, minor abrasions didn't kill him. That's what the Industrial Commission found, and that's what these studies show. So his injuries and death had nothing to do with being behind the wheel of the car. That's correct. In this case, it obviously did. And this is a motor vehicle accident case. Dr. Zwilling is the only doctor who gave any testimony as to what caused the injury, and he testified that it was a motor vehicle accident, not the sneezing. And so that testimony, I think, is really the linchpin here. There is no question that this is not due to something, solely something personal. The more proximate cause of this gentleman's injuries were the motor vehicle accident, according to the testimony of Dr. Zwilling, not his sneezing. And I think, you know, for that reason, this court should apply the stem bridge standard. I see no reason to change that, and I think it clearly would lead to an affirmation of the decision from the Illinois Industrial Commission. Unless there's any other questions, I will not take this. Thank you, Counselor Rubato. The doctor's Zwilling testimony, there's no dispute, and I tried to make this point in the commission also, there's no dispute that the cause and fact of the injuries were the truck accident. The issue is the legal cause of those injuries, and I have to go back to, in listening to the Schwartz versus the stem bridge, it's about the death. I don't understand that. If Schwartz lives, those superficial abrasions in that case were caused by the motor vehicle accident. And he was traveling, they point out, it's pointed out, traveling on a thin layer of snow and ice, traveling at night, there was traffic. There's no distinction in these cases, two cases, except for the death part of it. So to say that those injuries in Schwartz were not caused by the accident is not accurate. The court, in this opinion, it says that the analysis was done. There was some type of, he didn't suffer a heart attack. He experienced some type of a cardiac event. The question for the commission is whether some aspect of the decedent's employment was a causative factor in the event. And in this case, the same question. Was there some aspect of the employment that was a causative factor to the Valsalva event? The answer is no. What about the driving? The person was driving in Schwartz. The person was driving in Schwartz. I go back to the quote that there's something different, doing something reckless, associated with your employment, which is stem bridge, as opposed to something, it differs considerably from a risk that is totally unconnected to the work and is personal in nature. That's what the risk was, the Valsalva. Those two cases are totally distinguishable. And the evidence in this particular case is that either the origin of the risk or the injuries were connected to employment. And to be clear, it is not my position that any person you put behind the wheel would automatically, if they had a preexisting condition, would not make it compensable. In fact, I hope that this transcript does not get out to my opponents, because I think I've freely admitted that there are cases, but this is not one of them. The risk was purely personal in nature. I've addressed the only exception that could apply, and that's the Rockford Hotel exception through Builder Square, and that's why I got into the injuries, not CISPRO. Thank you, Justice. Thank you, Counsel. The court will take the matter under advisory.